UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
 :
RANDEL O. SMICKLE, :
 :
                            Plaintiffs, :
 : 16-CV-3333 (VSB)
       - against - :
 : **OPINION & ORDER**
 :
The City of New York; N.Y.C.D.O.C. :
Environmental Health; N.Y.C.D.O.H. & M.H.; :
N.Y.C.D.O.H. & M.H. Comm. Mary Basset; :
N.Y.C.D.O.C. Environmental Health Asst. :
Comm. Patricia Feeney; Medical :
Administrator, Ms. B. Parboo; Medical :
Administrator, Mr. John Doe; Senior Medical :
Director Mr. R. Ramos; Senior Medical :
Director Ms. Jane Doe; Head Nurse (RN) T. :
Bowen, :
 :
                            Defendants. :
------------------------------------------------------------X

Appearances:

Randel Smickle
Wallkill, New York
*Pro Se Plaintiff*

Evan Robert Schnittman
Kate Fay McMahon
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Pro se Plaintiff Randel Smickle brings this action under 42 U.S.C. § 1983, alleging that

his constitutional rights were violated while he was incarcerated at an infirmary annex on Rikers

Island. Before me is Defendants' motion for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c). Because Plaintiff executed a general release that bars all of his claims

in this action, Defendants' Rule 12(c) motion is GRANTED, and Plaintiff's claims are dismissed in their entirety.

## I. **Background**[1]

Plaintiff alleges that doctors at Bellevue Hospital diagnosed Plaintiff with "a history of obesity and severe [obstructive sleep apnea]," conducted a sleep study, and recommended that Plaintiff sleep with a Continuous Positive Airway Pressure ("CPAP") machine that includes a humidifier. (Am. Compl. 8–9.)[2] On August 19, 2015, Plaintiff was transferred from Bellevue Hospital to the North Infirmary Command Annex ("NIC Annex"), where he received a CPAP machine that did not include a humidifier. (*See id.*) Plaintiff filed grievances requesting that he receive a CPAP machine that included a humidifier, (*see, e.g.*, Doc. 22-1, at 11), but his request was denied by a senior medical director as not medically necessary, (*see id.* at 9–10).

On December 27, 2015, Plaintiff was assaulted by another inmate in the NIC Annex, resulting in Plaintiff being "pushed into the door frame" and falling on his back causing back and shoulder pain. (*Id.*) The inmate who assaulted Plaintiff was sprayed with a chemical agent, and Plaintiff was incidentally exposed to some of the chemical agent. (*Id.* at 10.) Plaintiff was taken for an x-ray that showed "no bone injury," but he did not receive any pain medication or physical therapy for his resulting back and shoulder pain. (*Id.*)

On August 11, 2016, Plaintiff slipped and fell, which exacerbated his back and shoulder pain and also injured the right side of his body, making it difficult for Plaintiff to move. (*Id.* at

---

[1] "On a [Rule] 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (per curiam)).

[2] "Am. Compl." refers to Plaintiff's amended complaint filed on October 17, 2016 and the documents attached to it ("Amended Complaint"). (Doc. 22.) The Amended Complaint does not contain sequential paragraph or page numbers, so in citing to the Amended Complaint I refer to the page numbers given to the document by the Court's electronic case filing system.

10.) Plaintiff was taken to Elmhurst Hospital, received an x-ray that showed no bone injuries, and was provided physical therapy for his back injury. (*Id.*) Plaintiff requested an MRI, but was unable to receive an MRI because he was "40 lbs" above the MRI machine's maximum weight limit. (*Id.*) According to Plaintiff, he saw an orthopedic doctor and asked for a cane to assist with walking, but he never received one. (*Id.* at 11.)

Additionally, Plaintiff developed posterior scalp folliculitis as a result of receiving haircuts at Rikers Island. (*Id.*) Plaintiff alleges that he did not receive any treatment for this condition and was not scheduled for an appointment with a dermatologist until February of 2017. (*See id.*) However, according to his medical records, copies of which he annexed to his Amended Complaint, Plaintiff was seen by a dermatologist on or about August 31, 2016 and was prescribed medication to treat this scalp condition. (Am. Compl. Ex. 1, at 30–32.)

On March 6, 2016, Plaintiff submitted a notice of claim to the Office of the New York City Comptroller in connection with Plaintiff's alleged inability to receive a CPAP machine that included a humidifier at the NIC Annex (the "CPAP Claim"). (*See* Schnittmann Decl. Ex. A, at 3–7.)[3] With the assistance of counsel, Plaintiff settled the CPAP Claim with the Comptroller for $2,000 and executed a general release in connection with the settlement (the "Release"). (*See id.* Exs. B.) The Release states, in relevant part:

> RANDEL SMICKLE . . . as "RELEASOR", . . . in consideration of the payment of $2,000.00 . . . hereby voluntarily, knowingly, and willingly releases and forever discharges the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York . . . , collectively the "RELEASEES", from any and all liability, claims, or rights of action alleging a violation of civil rights and any and all claims, causes of action, suits, administrative proceedings, debts, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

---
[3] "Schnittman Decl." refers to the Declaration of Evan Schnittman, filed June 29, 2017. (Doc. 36.)

3

> contracts, controversies, transactions, occurrences, agreements, promises, damages, variances, trespasses, extents, judgments, executions, and demands known or unknown, at law, in equity, or by administrative regulations, which RELEASOR, his/her heirs, distributes, devisees, legatees, executors, administrators, successors and assignees had, now has or hereafter can, shall, or may have, either directly or through subrogees or other third persons, against the RELEASEES for, upon or by reason of any matter, cause of thing whatsoever that occurred through the date of this RELEASE.

(*Id.* at 1.) The Release was executed on January 13, 2017, nearly three months after the Amended Complaint was filed in this action on October 17, 2016.

## II. Procedural History

On May 4, 2016, Plaintiff filed his complaint, (Doc. 2), which was amended on or about October 17, 2016, (Doc. 22). On December 15, 2016, Defendants answered the Amended Complaint. (Doc. 25.) On June 29, 2017, Defendants filed a motion for leave to amend their answer pursuant to Rule 15(a) and for judgment on the pleadings pursuant to Rule 12(c). (Doc. 35.)

On July 14, 2017, I granted Defendants' motion to amend their answer and noted that Defendants' motion for judgment on the pleadings was under review. (Doc. 40.) I also ordered that Plaintiff's opposition to Defendants' motion for judgment on the pleadings was due on August 25, 2017, and that any reply was due on September 15, 2017. (*Id.*) On the same day, Defendants filed their Amended Answer. (Doc. 41.) Plaintiff did not file an opposition to Defendants' motion for judgment on the pleadings in accordance with my prior order.

On March 12, 2018, I advised that if Plaintiff failed to file his opposition on or before March 28, 2018, I would deem Defendants' motion unopposed. (Doc. 42.) Plaintiff filed an

4

affidavit in opposition to Defendants' motion on March 27, 2018.[4]  (Doc. 43.)  On March 28, 2018, Defendants submitted a letter requesting that their motion be deemed fully briefed because they "rest on the arguments set forth in their moving papers and do not wish to submit a reply." (Doc. 44.)  Accordingly, the motion before me has been fully briefed by the parties.

### III.  Legal Standard

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  In deciding a motion for judgment on the pleadings, a district court must "employ the same standard applicable to Rule 12(b)(6) motions to dismiss," *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78 (2d Cir. 2015), which requires "[a]ccepting the non-moving party's allegations as true and viewing the facts in the light most favorable to that party," and granting judgment on the pleadings "if the moving party 'is entitled to judgment as a matter of law,'" *Richards v. Select Ins. Co.*, 40 F. Supp. 2d 163, 165 (S.D.N.Y. 1999) (quoting *Burns Int'l Sec. Servs., Inc. v. Int'l Union*, 47 F.3d 14, 16 (2d Cir. 1995)).  A party is entitled to judgment on the pleadings "only if it has established that no material issue of fact remains to be resolved."  *Juster Assocs. v. City of Rutland*, 901 F.2d 266, 269 (2d Cir. 1990) (internal quotation marks omitted); *see also Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1988) (noting that judgment on the pleadings "is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings").

Courts must also afford pro se litigants "special solicitude."  *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994).  When a plaintiff proceeds pro se, the court should "read his supporting papers

---

[4] Plaintiff appeared at the conference held on this matter on July 14, 2017 in connection with Defendants' motion, and I also take Plaintiff's arguments from that conference into account for the purposes of deciding this motion.

5

liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). "[T]he Court must . . . review the entire record and ensure that the moving party is entitled to judgment as a matter of law." *Mancebo v. Comm'r of Soc. Sec.*, No. 16-CV-6400 (JPO), 2017 WL 4339665, at *2 (S.D.N.Y. Sept. 29, 2017) (quoting *Graham v. Comm'r of Soc. Sec.*, No. 16-CV-142 (LDH), 2017 WL 1232493, at *1 (E.D.N.Y. Mar. 31, 2017)).

## IV. Discussion

Defendants argue that all of Plaintiff's claims in this action are barred by the Release, which was executed in connection with the settlement of his CPAP Claim. (Defs.' Mem. 7–9.)[5] For the reasons that follow, I agree.

### A. *The Release*

#### 1. Applicable Law

A court may take judicial notice of a release where such a release is incorporated by reference in a party's answer. *See, e.g.*, *Arzu v. City of New York*, No. 13-CV-5980 (RA), 2015 WL 4635602, at *3 (S.D.N.Y. Aug. 3, 2015) (taking judicial notice of a release on a motion for judgment on the pleadings when an amended answer asserted an affirmative defense based on the release and incorporated the release by reference). Moreover, "[p]ublicly filed stipulations of settlement are subject to judicial notice." *Waters v. Douglas*, No. 12 Civ. 1910(PKC), 2012 WL 5834919, at *2 (S.D.N.Y. Nov. 14, 2012); *see also Loccenitt v. Pantea*, No. 12 Civ. 1356(AT), 2014 WL 7474232, at *2 (S.D.N.Y. Dec. 29, 2014) ("Both the Stipulation and the Release appear on the public docket. Therefore, the Court may consider these documents.").

---

[5] "Defs.' Mem." refers to Defendants' Memorandum of Law in Support of Defendants' Motion for Leave to Amend Their Answer and for Judgment on the Pleadings, filed June 29, 2017. (Doc. 37.)

"A release is a species of contract and 'is governed by principles of contract law.'" *Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 514 (2d Cir. 2001) (quoting *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Gillaizeau*, 766 F.2d 709, 715 (2d Cir. 1985)). Whether a contract is ambiguous is a question for the court to decide. *Id.* "The interpretation of an unambiguous contract—including a release—is also a question of law reserved for the court." *Id.* at 515.

Under New York law, "a release that is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced." *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 463 (2d Cir. 1998). "Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies." *Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (summary order) (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (2d Dep't 2011)). "When general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Id.* (quoting *Consorcio Prodipe, S.A. de C.V. v. Vinci, S.A.*, 544 F. Supp. 2d 178, 189 (S.D.N.Y 2008)). Furthermore, "[g]eneral releases are enforceable as to civil rights claims." *Waters*, 2012 WL 5834919, at *3.

### 2. Application

As an initial matter, I take judicial notice of the Release and find that its language is unambiguous. *See Smith v. City of New York*, No. 12 Civ. 3303(CM), 2013 WL 5434144, at *4–5 (S.D.N.Y. Sept. 26, 2013) (holding a substantially similar release to be "unambiguous"). Plaintiff agreed to "release[] and forever discharge[] the City of New York, and all past and present officials, officers, directors, managers, administrators, employees, agents, assignees, lessees, and representatives of the City of New York" for all claims that "occurred through the

date of [the Release]."[6] (Schnittman Decl. Ex. B, at 1.) Defendants—the City of New York and a senior medical director employed by the Department of Corrections—are covered under this language in the Release. Plaintiff, who was represented by counsel in connection with the settlement of his CPAP Claim, knowingly and voluntarily entered into the Release, and executed it on January 13, 2017, nearly three months after Plaintiff filed his Amended Complaint on October 17, 2016. As such, Plaintiff waived all claims against Defendants, known or unknown, based on *any* event occurring on or before the date of the Release, which includes all of Plaintiff's claims in this action.[7] Accordingly, all claims in the Amended Complaint must be, and are, dismissed.

## V.     Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings, (Doc. 35), is GRANTED, and the Amended Complaint is dismissed. The Clerk of Court is respectfully directed to enter judgment for Defendants and close this case. The Clerk of Court is instructed to mail a copy of this Opinion and Order and the judgment to the pro se Plaintiff.

SO ORDERED.

Dated: March 29, 2018
         New York, New York

Vernon S. Broderick
United States District Judge

---

[6] Notably, the CPAP Claim that Plaintiff settled with the Comptroller—thus triggering the execution of the Release—is one of the very claims that Plaintiff asserts in this action.

[7] Plaintiff's argument that the CPAP Claim is not the only complaint he has against Defendants does not change the outcome here—Plaintiff waived all claims against Defendants, known and unknown, occurring on or before the date of the Release.

8